**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| DEMOCRATIC-REPUBLICAN | : | |
| ORGANIZATION OF NEW JERSEY | : | |
| *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No. 3:12-cv-05658 |
| v. | : | |
| | : | |
| KIMBERLY GUADAGNO, *et al.*, | : | **AMENDED OPINION** |
| | : | |
| Defendants. | : | |

_____:

**WOLFSON, United States District Judge**:

Before the Court is a motion for a preliminary injunction and other relief, wherein the moving parties specifically challenge the "preferences" New Jersey provides to the two main political parties through placing them in the first two columns of the general election ballots and prohibiting the use of any part of their name by other, unaffiliated candidates. In their complaint, Plaintiffs Democratic-Republican Organization of New Jersey, Eugene Martin LaVergne, Frederick John LaVergne, Leonard P. Marshall, Tracy M. Caprioni, Kimberly Sue Johnson, and Donald E. Letton (collectively, "Plaintiffs") allege, with regard to the upcoming New Jersey November 6, 2012 general election, that they have been denied placement together and on the left side of the ballot, as well the use of the slogan "Democratic-Republican." As a result, Plaintiffs filed a Verified Complaint in this Court on September 11, 2012, seeking a preliminary injunction that declares unconstitutional New Jersey state statutes N.J.S.A. 19:1-1, N.J.S.A. 19:5-1, N.J.S.A. 19:12-1, N.J.S.A. 19:14-2, and N.J.S.A. 19:13-4. Plaintiffs further seek an Order directing Defendants Lt. Governor Kimberly Guadagno (hereinafter "Guadagno" or "the State"), Edward P. McGettigan, Timothy D. Tyler,  Joseph Ripa, Rita Marie Fulginiti, Gloria Noti,

Christopher J. Durkin, James Hogan, Barbara A. Netchert, Mary H. Melfi, Paula Sollami-Covello, M. Claire French, Elaine Flynn, Joan Bramhall, Scott M. Colabella, Kristin M. Corado, Gilda T. Gill, Brett Radi, Jeff Parrott, and Joan Rajoppi (hereinafter, "County Clerk Defendants"), New Jersey Republican Party, and New Jersey Democratic Party (collectively, "Defendants") to reconfigure the general election ballots to allow Plaintiffs to appear bracketed together in the first and second columns of the ballot and to use their political organization's name of "Democratic-Republican" as a slogan.   "Alternatively, [P]laintiffs seek an Order directing that they have the right to use the slogan . . . , and appear to the right of all other independent candidates, to the exclusion of any other unaffiliated candidates in th[e] column." See Ver. Compl. ¶ 1.  Each of Plaintiffs' claims is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, as well as 42 U.S.C. § 1983.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the present case, Plaintiffs are candidates for various elected public office positions at the national and county levels[1] who have satisfied all requirements to be placed on the November 2012 general election ballots, as candidates nominated by petition.[2]  See Ver. Compl.

---

[1]    Plaintiff Eugene LaVergne is a candidate for the United States Senate; Plaintiff Frederick LaVergne is a candidate for the United States House of Representatives in the Third Congressional District; Plaintiff Leonard Marshall is a candidate for the United States House of Representatives in the Fourth Congressional District; Plaintiffs Scott Neuman and Tracy Caprioni are candidates for Ocean County Freeholder; and Plaintiffs Kimberly Sue Johnson and Donald Letton are candidates for Burlington County Freeholder.  Ver. Compl. ¶¶ 5-11; Pl. Memo at 11-12.

[2]    In New Jersey, an individual wishing to run for publicly elected office is eligible to be placed on the ballot if he or she files a nominating petition with a minimum number of signatures in support of his or her candidacy.  N.J.S.A. 19:13-1, 19:13-4, 19:13-5.  Nominating petitions that name candidates for offices to be filled by voters of the entire State are addressed to the Secretary of State, and petitions that name candidates for offices to be filled only by voters of one county are addressed to the clerks of the respective counties in which the candidates seek office.  N.J.S.A. 19:13-3.  If no objections are filed, the petitions are granted.  N.J.S.A. 19:13-10. If a candidate wishes to appeal a Secretary of State or county clerk decision, he or she may

¶ 1; Pl. Memo at 11-12.  Plaintiffs, however, are unsatisfied with their expected placement on the ballots, and have requested from the appropriate State or county officials a configuration of the ballot that would allow Plaintiffs the opportunity to be placed of the leftmost side of the ballot and/or would "bracket" Plaintiffs together on any ballot on which more than one of them appears.  Pl. Memo at 11-13.  Plaintiffs also requested on their nominating petitions that the "slogan" "Democratic-Republican" be placed on the ballot next to their names.  Id.  None of Plaintiffs' requests were approved by any State or county official, which led to the instant litigation.  Id.

The present litigation has loose ties to a similar challenge to New Jersey election laws brought previously in state court.  Years prior to bringing the instant suit, Leonard P. Marshall, one of the plaintiffs in this action, brought a suit in state court against then-Attorney General, John J. Farmer, and a host of other defendants that included the New Jersey State Republican Committee, the New Jersey State Democratic Committee, and each of the New Jersey county clerks.  In that action, the plaintiffs argued that the "political parties"[3] -- i.e., the Republican and Democratic Parties -- should not have been awarded the exclusive right to appear in the first two ballot columns for the 1999 general election.  See New Jersey Conservative Party v. Farmer, 324 N.J. Super. 451, 456-57 (App. Div. 1999), While the plaintiffs prevailed at the trial level, they lost on appeal in the Appellate Division.  Id., 457, 462.  Plaintiff Marshall litigated that case as a

---

appeal to the Superior Court for an expedited ruling.  N.J.S.A. 19:13-12.  The appeal must be filed within 12 days "after the last day for the filing of petitions . . . ."  N.J.S.A. 19:13-12.  Moreover, "under the allocation of business among the various Divisions of the Superior Court effected by R. 2:2-3, a decision of the Secretary of State is appealable to th[e Appellate Division]."  Lesniak v. Budzah, 265 N.J. Super. 165 (App. Div. 1993) aff'd as modified by 133 N.J. 1 (discussing nomination petition challenges) (emphasis in original).

[3]     As explained in more detail in this Opinion, the term "political party" has a defined meaning under New Jersey law, reflecting a party's status as a organization that has achieved significant voter support.  See N.J.S.A. 19:1-1.

member of the New Jersey Conservative Party.  See Pl. Memo. at 9-10.

On remand in Farmer, the plaintiffs "[c]hang[ed] course" and argued that they were unconstitutionally excluded from the lottery process that determines which parties are entitled to ballot positions pursuant to N.J.S.A. 19:14-12.  New Jersey Conservative Party v. Farmer, 332 N.J. Super. 278, 281-82 (Ch. Div. 1999).  Importantly, the Chancery Division noted in footnote 5 of its opinion that, while there existed a "colorable argument" that the Appellate Division's interpretation of N.J.S.A. 19:5-1 was unconstitutional because it created an "arbitrary or irrational way of determining whether a political party has made a sufficient showing at a primary to retain political party status," id. at 284 n.5, the plaintiffs did not "urge the unconstitutionality of N.J.S.A. 19:5-1" on remand.  Additionally, the Chancery court held that N.J.S.A. 19:14-12 was not unconstitutional, reasoning that New Jersey's decision to grant political parties the right to be placed in the leftmost columns does not impinge upon the other party's constitutional rights under the First or Fourteenth Amendments.  The Chancery court decision was never appealed.

In the present matter, Plaintiffs raise similar challenges to N.J.S.A. 19:5-1.  In addition to injunctive relief, Plaintiffs filed a request for an Order to Show Cause ("OTSC") along with their Verified Complaint.  The OTSC primarily seeks a declaration that the

> 10% statutory standards for creating, certifying, and conferring special benefits on statutorily recognized 'political parties' (i.e. Major Political Parties) in N.J.S.A. 19:1-1, N.J.S.A. 19:5-1, N.J.S.A. 19:12-1, N.J.S.A. 19:13-4 and N.J.S.A. 19:14-2, as interpreted by the New Jersey Appellate Court in New Jersey Conservative Party v. Farmer, 324 N.J. Super. 451 . . . (App. Div. 1999) . . . , is completely irrational and arbitrary and invidiously discriminates against plaintiffs and is therefore unconstitutional facially and as applied to plaintiffs as violating the [First Amendment] and Fourteenth Amendment . . . , and also operates to violate the rights of Federal candidate plaintiffs as guaranteed and secured by Article I, Section 4, clause 1 (as modified by the [Seventeenth Amendment] and the [Twenty Sixth Amendment])

Proposed OTSC at 2.  Hereinafter, I refer to this claim as the "10%" claim.

Plaintiffs, additionally, seek (i) a judgment declaring N.J.S.A. 19:13-4 unconstitutional, (ii) an injunction permanently enjoining Defendants from enforcing each of the challenged election laws, (iii) an order directing Defendants to permit Plaintiffs to be bracketed "together in the same column" on the election ballot and an "equal opportunity to appear in the first and second columns on the left of the General Election Ballot," (iv) a judgment declaring that all "Democratic-Republican" candidates be bracketed separately from unaffiliated candidates; (v) attorney fees and costs.  Proposed OTSC at 2-4.

On September 14, 2012, the Court issued an Order to Show Cause denying any request for emergent relief, but expediting consideration of the issues by directing Defendants to file opposition papers by September 24, 2012, and Plaintiffs to file their reply by September 27, 2012.  While Guadagno and several of the County Clerk Defendants filed opposition papers, several County Clerk Defendants filed letters noting that they were not timely served with the Order to Show Cause.  Plaintiffs filed their reply on September 28, 2012.  Plaintiffs' reply limited Plaintiffs' claims to two issues: First, whether N.J.S.A. 19:5-1, both facially and as applied to Plaintiffs, violates the Equal Protection Clause of the Fourteenth Amendment and the First Amendment.  See Pl. Reply at 2.  Second, whether N.J.S.A. 19:13-4, both facially and as applied to Plaintiffs, violates the Fourteenth Amendment and the First Amendment's guarantees of freedom of association and speech.  See id.

On October 3, 2012, the Court held a hearing on Plaintiffs' requests for injunctive relief. On the morning of the hearing, but prior to its commencement, counsel for Plaintiffs, Richard T. Luzzi, Esq., filed with the Court a substitution of attorney form, reflecting that Plaintiff Eugene LaVergne was appearing pro se.  Appearances were also made on behalf of the State and a

number of the County Clerk Defendants.

During the hearing, counsel for Plaintiffs and the State, as well as Mr. LaVergne, made several representations and concessions to the Court, which I will address in this opinion where relevant.  On the record, I also disposed of several arguments and defenses raised by the State and Defendant Hudson County Clerk Netchert -- concerning res judicata, joinder, and timely service -- and I therefore do not address those arguments here.  I also dismissed, pursuant to the Eleventh Amendment, Plaintiffs' claim against Guadagno for monetary damages.

## II.   STANDARD OF REVIEW

## A.   PRELIMINARY INJUNCTION

"When deciding whether to issue a preliminary injunction, a district court must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest."  McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks omitted).

For the purposes of this motion, the Court assumes that Plaintiffs have satisfied the irreparable harm prong if they can demonstrate a constitutional injury.  See Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673 (1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").  Indeed, should a general election go forward, any infringement on Plaintiffs' constitutional rights would be irreparable.  See Koppell v. New York State Bd. of Elections, 8 F. Supp. 2d 382, 384 (S.D.N.Y. 1998) aff'd, 153 F.3d 95 (2d Cir. 1998). Accordingly, in deciding Plaintiffs' motion for preliminary injunctive relief, the Court will focus on the probability of Plaintiffs' success on the

merits.  See id.

**B.    CONSTITIONAL CLAIMS**

Plaintiffs and the State differ on the standard of review applicable to Plaintiffs'
constitutional claims.  Plaintiffs argue that their claims implicate "core First Amendment rights,"
see Pl. Memo. at 28, and thus are subject to "strict scrutiny" review.  See Pl. Reply at 3-4.  The
State responds that rational basis review is appropriate.  See State Opp. at 23.  Neither party's
position is correct.

Rather, Anderson v. Celebrezze, 460 U.S. 780, 789 (1983), sets forth the appropriate
standard of review for election law challenges that allege constitutional violations.  "[T]he strict
scrutiny, intermediate scrutiny, and rational basis categories represent a convenient and familiar
linguistic device by which courts . . . have characterized their review . . . .  Anderson [however]
promulgated a less categorical system of classification. . . .  Put another way, ballot access cases
should not be pegged into the three aforementioned categories.  Rather, following Anderson, [the
Court's] scrutiny is a weighing process . . . ."  Rogers v. Corbett, 468 F.3d 188, 194 (3d Cir.
2006) (citation omitted); Anderson, 460 U.S. at 789.

Accordingly, in reviewing Plaintiffs' complaint, I must consider "what burden is placed
on the rights which [P]laintiffs seek to assert and then [I] balance that burden against the precise
interests identified by the [S]tate and the extent to which these interests require that [P]laintiffs'
rights be burdened.  Only after weighing these factors can [I] decide whether the challenged
statute is unconstitutional.  Consequently, [I] will look at the nature of the rights involved here
and the burdens imposed by [New Jersey] election law . . . in order to determine if the burden is
justified."  Id. (citations omitted.).  I turn now to Plaintiffs' claims.

**III.    DISCUSSION**

Plaintiffs' complaint challenges the constitutionality of New Jersey's election laws regarding the ballots for the upcoming November 2012 general election.  Before addressing Plaintiffs' arguments, however, it is important to understand New Jersey's statutory scheme governing elections.  First, New Jersey defines a "political party" as an organization that obtains at least ten percent of votes cast in the primary election.  N.J.S.A. 19:1-1, 19:12-1.  As a practical matter, Plaintiffs suggest, the political parties are usually the Democratic and Republican Parties of New Jersey.  See Pl. Memo. at 20.  Alternatively, candidates who are unaffiliated with a recognized party may obtain placement on a general election ballot through nominating petitions ("unaffiliated candidates").  N.J.S.A. 19:13-3.  The distinction between political party candidates and unaffiliated candidates matters for the purposes of this suit because of the different ballot treatment they receive.  For example, political party candidates of the same party are "bracketed" together on the ballot, and also are placed on the left side of the ballots through a lottery process.  N.J.S.A. 19:14-12.  On the other hand, unaffiliated candidates are placed on the ballot in a manner determined by each county clerk.  Id.  Furthermore, political party candidates are listed on the ballot with the name of their respective political party, whereas unaffiliated candidates can request a designation of up to three words of their party name or principles, commonly known as a "slogan."  N.J.S.A. 19:13-4.  The slogan, however, cannot contain any part of a political party's name.  Id.

Challenging that statutory scheme, Plaintiffs specifically claim that N.J.S.A. 19:5-1 confers preferential ballot treatment on candidates of political parties.  In that connection, Plaintiffs argue that the statute, on its face, creates an arbitrary and irrational classification scheme, with political party candidates receiving beneficial ballot treatment and "bracketing" on the left side of New Jersey election ballots to the detriment of unaffiliated candidates.  Lastly,

Plaintiffs argue that the statute is applied irrationally and arbitrarily under the New Jersey Appellate Division's decision in New Jersey Conservative Party v. Farmer, 324 N.J. Super. 451, 735 A.2d 1189 (App. Div. 1999).  Related to that claim, Plaintiffs reason that under their proposed interpretation of N.J.S.A. 19:5-1, the Republican Party would not qualify as a political party for the upcoming election.

Plaintiffs also challenge N.J.S.A. 19:13-4, and in particular, its restriction that an unaffiliated candidate's slogan cannot contain the name, or any part thereof, of any political party.  Plaintiffs claim that this prohibition, on its face, violates their First Amendment rights of association and speech.

The State responds that the challenged New Jersey election laws are constitutional.  In that regard, the State argues that the United States Supreme Court rejected claims substantially similar to Plaintiffs' in Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970 (1971), and that under Jenness and its related decisions, Plaintiffs have failed to demonstrate any violation of constitutional rights.  State Opp. at 25-32.

**A.     10% Claim -- N.J.S.A. 19:5-1 and 19:14-12**

Plaintiffs first raise a facial challenge to N.J.S.A 19:5-1.  The heart of Plaintiffs' challenge in this regard is rather narrow.  Plaintiffs concede that the State may treat political party candidates differently than unaffiliated candidates for the purposes of ballot access.  However, Plaintiffs contend that once a candidate obtains the right to be placed on the ballot, no candidate may receive a predetermined, preferred placement on the left side of the ballot.  Put differently, Plaintiffs reason that, having satisfied the statutory requirements to obtain placement on the November 2012 general election ballots, they are now "similarly situated" to all other candidates that have met the ballot requirements.  Thus, Plaintiffs claim, N.J.S.A. 19:5-1,

impermissibly confers a benefit on political party candidates by reserving to them the left side of the ballot, and this benefit violates the Equal Protection Clause.  See Pl. Reply, 7-8.  In that connection, it further appears to the Court that, in addition to N.J.S.A. 19:5-1, Plaintiffs are also challenging the constitutionality of N.J.S.A. 19:14-12, which provides that political party candidates are placed on the left side of the ballot via a lottery, and grants county clerks the discretion to determine the placement of candidates nominated by petition.  The entirety of Plaintiffs' argument is premised on the notion that a "presumption of invalidity" attaches to any ballot placement classification system, and therefore the classification system must withstand strict scrutiny review in order to pass constitutional muster.  Accordingly, Plaintiffs' argument is that any layout or formatting of the general election ballot that treats political party candidates differently from other candidates violates the Equal Protection Clause of the Constitution.

It bears repeating that Plaintiffs rely on an inappropriate standard of review in framing their constitutional claims.[4]  As stated previously, a court addressing constitutional challenges to election laws must weigh the burden imposed by the laws against the state's interests in regulating elections.  See Anderson, 460 U.S. at 789.  Significantly, in resolving election law challenges, the primary focus is on the voter's rights, not the candidate's rights.  Id. at 786 ("'In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters.'").  Plaintiffs' contrary contention in its moving papers and at the hearing is thus unsupported by the controlling law.  Lastly, I note that although Plaintiffs' complaint and moving papers briefly reference a First Amendment challenge to N.J.S.A. 19:5-1, Plaintiffs have failed to describe how their First Amendment challenge differs from their Equal Protection Clause challenge.  Accordingly, I will analyze Plaintiffs' challenge to N.J.S.A. 19:5-1,

---

[4]     Plaintiffs cite to Anderson in their papers, but do not apply it properly, arguing that Anderson compels "strict scrutiny" review, not a balancing approach.  See, e.g., Pl. Reply at 3-4.

and any related statutes, under <u>Anderson</u> to determine whether the statute imposes an unconstitutional burden on Plaintiffs' voting rights.

Notwithstanding the convoluted nature of Plaintiffs' challenge to N.J.S.A. 19:5-1, at bottom, Plaintiffs' argument concerns the preferential treatment of political parties on the general election ballot.  Although Plaintiffs attempt to separate the issue of "ballot access" from "ballot placement," they cite no law in support of that distinction.  I am confident nevertheless that Plaintiffs' claim can be resolved at this preliminary stage largely through the rationales set forth in ballot access cases, including those relied on by both parties.  "Ballot access is recognized as an important aspect of voting rights," <u>Rogers</u>, 468 F.3d at 194, and it cannot be argued that placement on the ballot is more important than access to the ballot because placement is irrelevant without access.  Thus, it necessarily follows that if a candidate's ballot access can be regulated by the state, see <u>Jenness</u>, 403 U.S. at 441-42, a candidate's ballot placement can also be regulated, as placement is surely a less important aspect of voting rights than access. <u>Sonneman v. State</u>, 969 P.2d 632, 638 (Alaska 1998) ("[T]he statute in question, however, does not restrict access to the ballot or deny any voters the right to vote for candidates of their choice. . . . Instead, it merely allocates the benefit of positional bias, which places a lesser burden on the right to vote." (Citation omitted.)).  Accordingly, I will analyze Plaintiffs' ballot placement claim by analogy to a ballot access challenge to the extent possible.

As a threshold matter, it is well established that states may treat candidates affiliated with political parties differently than unaffiliated candidates.  "[A]lternate ballot access rules for major and minor political parties are not <u>per se</u> unconstitutional."  <u>Rogers</u>, 468 F.3d at 196. "[T]here are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political

organization on the other." <u>Jenness</u>, 403 U.S. at 441-42.  "There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot -- the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election."  <u>Id.</u> at 442.  Generally speaking, "state statutes regulating ballot access inevitably affect -- at least to some degree -- the individual's right to vote and his right to associate with others for political ends.  Nevertheless, not all such restrictions are unconstitutional. . . .  Where the statute imposes only a minimal nondiscriminatory burden on minor parties, yet affords reasonable access to the ballot, it generally has been upheld."  <u>Belitskus v. Pizzingrilli</u>, 343 F.3d 632, 643 (3d Cir. 2003) (citations and internal quotation marks omitted).  Furthermore, "[t]he state's interest in a timely and orderly election is strong.  The Supreme Court has recognized that, 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.'"  <u>Valenti v. Mitchell</u>, 962 F.2d 288, 301 (3d Cir. 1992) (quoting <u>Storer v. Brown</u>, 415 U.S. 724, 730, 94 S.Ct. 1274 (1974)).

In sum, "the right to ballot access, although important in both First Amendment and Equal Protection contexts, may be limited in accord with appropriate state interests, and . . . limitations imposed in furtherance of such interests need not be the most narrowly drawn as long as they are nondiscriminatory and reasonable in light of the relevant burdens."  <u>Rogers</u>, 468 F.3d at 194.  I therefore reject Plaintiffs' argument that treating political party candidates differently than unaffiliated candidates for the purposes of ballot placement is <u>per se</u> unconstitutional.

It is well-settled that the State has an interest in regulating elections to ensure that voters are able to understand the ballot, and may do so by treating political party candidates differently

than unaffiliated candidates.  Plaintiffs even concede this point in their reply.  See Pl. Reply at 12.  Yet notwithstanding this concession, Plaintiffs assert that the State may not constitutionally regulate the placement of candidates on ballots in a manner that gives certain candidates a predetermined, "preferential" placement.  See id. at 7-8.  Plaintiffs do not cite any law for their proposition that the State is precluded from regulating ballot layouts, and attempt instead to distinguish relevant, controlling, and persuasive case law.  See id.  Plaintiffs' arguments are unavailing.  Moreover, Plaintiffs do not dispute that "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions."  Burdick v. Takushi, 504 U.S. 428, 434, 112 S.Ct. 2059 (1992) (quoting Anderson, 460 U.S. at 788).

Accordingly, the constitutionality of N.J.S.A 19:5-1 and 19:14-12 turns on whether they impose burdens on voters and candidates that are not outweighed by the State's interest in regulating elections.  See Anderson, 460 U.S. at 789.  In order to analyze the merits of Plaintiffs' constitutional claim, I must first discern the burden N.J.S.A. 19:5-1 places on Plaintiffs.  Although Plaintiffs poorly articulate the nature or degree of this burden,[5] they appear to claim that they are burdened by not having an equal opportunity to be placed on the left side of the ballot.  See Pl. Reply at 8.

I reject Plaintiffs' ballot placement argument for two reasons.  First, Plaintiffs offer no

---

[5]    At the hearing, counsel for Plaintiffs argued that the State, in its papers, had conceded that ballot placement conferred a benefit on the political parties and their candidates, and therefore Plaintiffs were relieved of their obligation of showing a burden.  Plaintiffs misconstrue the State's argument, which concerned generally the State's differing treatment of political party candidates and candidates nominated by petition.  As I explain in this Opinion, such differing treatment is constitutionally permissible.  Furthermore, the State resolved any ambiguity in its argument during the hearing, clarifying that it was not arguing that a candidate's placement on the left side of the ballot confers a benefit in the form of additional votes.

support for a constitutional right to ballot placement.[6]  Second, Plaintiffs provide <u>no</u> evidence that demonstrates that certain ballot placements confer any benefit, such as additional votes or voter recognition.  I find this altogether remarkable, given that a virtually identical challenge to New Jersey election laws was made by the plaintiffs in <u>New Jersey Conservative Party, Inc. v. Farmer</u>, 332 N.J. Super. 278 (Ch. Div. 1999), in which case Plaintiff Leonard Marshall was also a plaintiff, and the plaintiffs were represented by current Plaintiff Eugene LaVergne.  In <u>Farmer</u>, the Chancery Division explained that the plaintiffs' claim involved nothing more than "an equal chance to obtain the votes of . . . voters who cast a vote without any reason or rationale at all," but instead selected a candidate simply by virtue of ballot location.  <u>Id.</u> at 286.  The court rejected the plaintiffs' claim because they failed to "demonstrate that the Legislature's method of governing the manner of elections, and its impact upon this so-called 'windfall' vote, [was] violative of the standard of scrutiny required by the federal constitution."  <u>Id.</u>  In the present case, it also appears that Plaintiffs' underlying, if unstated, interest in being placed on the left side of the ballot is to garner this "windfall" vote from irrational voters.  Plaintiffs, however, have not alleged or argued that placement elsewhere on the ballot would prevent voters from locating them.  I therefore am unconvinced that Plaintiffs' placement on the right side of the ballot will result in any harm, much less one of constitutional magnitude.

---

[6]     At the hearing, Defendant Eugene LaVergne, arguing for himself only, relied on <u>Williams v. Rhodes</u>, 393 U.S. 23, 89 S.Ct. 5 (1968), for the proposition that preferential ballot placement for a candidate or political party violates the Constitution.  <u>Williams</u>, which address ballot access, is wholly inapposite to Plaintiffs' claim.  <u>See id.</u> at 31 ("[T]he right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot. In determining whether the State has power to place such unequal burdens on minority groups where rights of this kind are at stake, the decisions of this Court have consistently held that 'only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.'").  Moreover, Plaintiffs' argument rests on the conclusory assertion that certain ballot placements are more preferential than others -- in terms of garnering votes or otherwise -- and accordingly I reject it for the same reasons as stated above.

I further echo here the Chancery Division's reasoning that "[t]he issue [of ballot placement] should be decided by <u>persuasive empirical evidence</u>. . . . [N]o admissible evidence has been submitted on this particular factual contention, only speculation. Indeed, plaintiffs submitted no affidavits or certifications of any kind in support of the order to show cause. Accordingly, the linchpin to plaintiffs' argument -- that being in the first or second column, instead of the third column, has significance on election day -- is utterly absent from the record in this case." <u>Farmer</u>, 332 N.J. Super. at 290 (emphasis added). The same lack of a factual predicate exists in the case before this Court.

In that connection, I have uncovered, without any guidance from Plaintiffs, other federal court decisions addressing similar constitutional challenges to ballot placement, formatting, or layout. In virtually all of these cases, courts have required evidence demonstrating that ballot placement confers a benefit <u>prior</u> to determining whether the plaintiffs have been burdened, let alone harmed. <u>See, e.g.</u>, <u>Sangmeister v. Woodard</u>, 565 F.2d 460, 465 (7th Cir. 1977) ("The effect of ballot placement on voting is a question of fact . . . . [W]e hold that the trial court's conclusion that 'top placement on the ballot would be an advantage to the plaintiff' is supported by substantial evidence and therefore is not clearly erroneous." (Citations omitted.)); <u>McLain v. Meier</u>, 637 F.2d 1159, 1166 (8th Cir. 1980) ("The effect of ballot placement on voting is a matter of fact."); <u>New Alliance Party v. New York State Bd. of Elections</u>, 861 F. Supp. 282, 288 (S.D.N.Y. 1994) ("[C]ourts have consistently held that the effect of ballot placement on election outcomes is a factual determination. . . . That position bias is a popular perception of the voting public, however, is not sufficient to exempt [plaintiff] from the burden of proving its claims."(Citations omitted.)); <u>see also</u> <u>Green Party of Tennessee v. Hargett</u>, No. 3:11-0692, 2012 WL 913259, at *5 - *8 (M.D. Tenn. Mar. 16, 2012) (collecting cases requiring empirical

evidence of positional bias to determine burden imposed on plaintiffs).  Thus, Plaintiffs, at the very least, should have presented the Court with <u>some</u> type of evidence demonstrating a benefit and/or burden that stems from ballot placement.  Without any such evidence, the Court is unable to make a determination that Plaintiffs have suffered any cognizable, constitutional harm in this case.  In other words, Plaintiffs have failed to establish a likelihood of success on the merits that would allow a preliminary injunction to issue.

Furthermore, even assuming for the sake of this motion that ballot placement might burden some candidates -- for example, by making it marginally more difficult for a voter to quickly identify all of the candidates on the ballot -- I nevertheless consider this to be less onerous than the burdens imposed by the statutes the Supreme Court upheld in <u>Jenness</u> and, more recently, in <u>Timmons v. Twin Cities Area New Party</u>, 520 U.S. 351, 367 (1997) (upholding constitutionality of "anti-fusion" law prohibiting candidates from associating with more than one party on a ballot).  Indeed, in <u>Timmons</u>, the Supreme Court explained that "the [s]tates' interest [in establishing orderly elections] permits them to enact reasonable election regulations that may, in practice, favor the traditional two-party system . . . . And while an interest in securing the perceived benefits of a stable two-party system will not justify unreasonably exclusionary restrictions . . . [s]tates need not remove all of the many hurdles third parties face in the American political arena today."  <u>Id.</u>

Plaintiffs have failed to demonstrate any burden on them as a result of the ballot placement requirements of N.J.S.A. 19:5-1 and 19:14-12.  I therefore need not address the State's interest underlying these statutes in order to find them constitutional under <u>Anderson</u>.  Nevertheless, I note that the State has offered, in its papers and at the hearing, several interests supporting its method of regulating ballot placement in a way that might appear to favor political

parties.  Specifically, the State claims that political party candidates have demonstrated a certain "modicum of community support" and therefore it is reasonable to place them together on the same side of the ballot to the exclusion of unaffiliated candidates, who have failed to demonstrate the same amount of support.  Cf. Jenness, 403 U.S. at 42.  In that connection, the State posits, it is important for voters to easily identify these candidates and parties on the ballot, which is accomplished by ensuring that candidates for political parties are clearly separated on the ballot from candidates nominated by petition.  In sum, the State argues, these regulations serve the interest of maintaining the integrity of the election process.  See Timmons, 520 U.S. at 364 ("States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials.").  I am convinced that even if Plaintiffs' claim supported a finding of some degree of burden, the State's interests in this case would be sufficient for the statutes to pass constitutional muster.

For these reasons, I conclude that placing political party candidates on the left side of the ballot and all other candidates on the right side, as prescribed by N.J.S.A 19:5-1 and 19:12-14, does not violate Plaintiffs' constitutional rights.  These statutes impose, at most, a minimal burden on Plaintiffs' ballot access.[7]  Because the Plaintiffs' burden, if any, is negligible, any reasonable regulatory interest provided by the State will ensure the statutes' constitutionality under Anderson.  Council of Alternative Political Parties v. Hooks, 179 F.3d 64, 78 (3d Cir. 1999) ("Because the burden is not severe, the State need not proffer a narrowly tailored regulation that advances a compelling state interest. Instead, important regulatory interests

---

[7]   Significantly, Plaintiffs have not argued or alleged that ballot placement affects the campaign efforts or formation of their political organization.  Cf. Council of Alternative Political Parties v. Hooks, 179 F.3d 64, 76 (3d Cir. 1999) (noting that "the Supreme Court has refused to recognize a statute's incidental effect on a minor party's future viability as justification for overturning an otherwise reasonable, nondiscriminatory regulation").

provide a sufficient justification.").  Here, the State has explained that the statute is grounded in the integrity of the election process by ensuring that voters can clearly identify which candidates are affiliated with political parties.  Accordingly, I am satisfied that N.J.S.A. 19:5-1 and 19:14-12 do not violate the Equal Protection Clause or the First Amendment.

Plaintiffs also challenge N.J.S.A. 19:5-1 as applied specifically to Plaintiffs.  I do not understand how Plaintiffs' argument in this regard varies from their argument that the statute is facially invalid.  "An as-applied attack . . . does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right."  United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010).  Plaintiffs, however, do not offer the "particular circumstances" in which they were deprived of their constitutional rights.  Indeed, Plaintiffs have failed to provide any facts or allegations demonstrating that the statute is being applied specifically against Plaintiffs in an unconstitutional manner.  Rather, it appears that Plaintiffs' "as applied" challenge is actually an attack on a New Jersey Appellate Division case interpreting N.J.S.A. 19:5-1, New Jersey Conservative Party v. Farmer, 324 N.J. Super. 451, 735 A.2d 1189 (App. Div. 1999).  Again, it is difficult to decipher Plaintiffs' convoluted argument.  Plaintiffs seem to argue that Farmer's interpretation of N.J.S.A. 19:5-1 sets forth an "arbitrary" method of calculating the threshold amount of votes required to be listed as a recognized political party on the general election ballots.  See Pl. Reply at 14.  Plaintiffs claim that the Appellate Division's interpretation of the statute in Farmer is unconstitutional because it results in an arbitrary determination of how candidates are placed on the ballot.  In that connection, Plaintiffs also argue that, assuming the invalidity of Farmer, the Republican Party has failed to obtain the threshold number of votes to qualify for placement on the left side of the upcoming general election ballot.

18

I find no merit to Plaintiffs' claim that <u>Farmer</u> leads to an unconstitutional application of N.J.S.A. 19:5-1.  Indeed, Plaintiffs provide no case law or reasoning to support their claim, but merely argue that the case is "irrational."  The crux of Plaintiffs' argument is that, under <u>Farmer</u>, "[t]he standard for counting votes and achieving the N.J.S.A. 19-5:1 threshold [for preferential ballot placement] is different and will vary in each primary election year, between Party to Party, County to County, Town to Town . . . ."  Pl. Reply at 14; <u>see also</u> <u>Farmer</u>, 324 N.J. Super. at 460-61 ("There is a primary election for the general election every year, N.J.S.A. 19:23-40, and a general election every year, N.J.S.A. 19:1-1 and 2-3.  With such a requirement, we conclude that a political party must qualify for a party column on the official ballot in the general election by satisfying the provision of N.J.S.A. 19:5-1 annually. This necessarily means that in those years where there are no primary elections for the General Assembly, other elections are considered in determining political party status for a party column.").

Plaintiffs have not shown how this interpretation of N.J.S.A. 19:5-1 results in arbitrary or irrational -- and therefore unconstitutional -- application of the statute.  Plaintiffs therefore have not demonstrated that a constitutional violation exists.  As I have already explained, Plaintiffs do not have a constitutional right to dictate their placement, or the placement of anyone else, on the ballot.  Thus, Plaintiffs' challenge to <u>Farmer</u>'s interpretation of N.J.S.A. 19:5-1 fails for want of a constitutional violation.

Plaintiffs' remaining argument, regarding the Republican Party's placement on the upcoming general election ballot, also fails because that claim is governed by <u>Farmer</u>.

**B.    "Slogan" -- N.J.S.A. 19:13-4**

Plaintiffs next challenge the constitutionality of N.J.S.A. 19:13-4.  Under this statute, unaffiliated candidates can request, via their nominating petitions, that a "designation of the

party or principles which the candidates therein named represent" be placed next to their names on the general election ballots.  N.J.S.A. 19:13-4.  This designation is commonly referred to as a candidate's "slogan."  The statute limits the slogan to three words, and prohibits the use of a political party name, or part thereof, in the slogans.  Id.  Under the circumstances of the present case, the only parties that have qualified as political parties under N.J.S.A. 19:1-1 for placement on the upcoming general election ballots are the "Democratic Party" and the "Republican Party."  See Pl. Memo at 35.  Accordingly, pursuant to N.J.S.A. 19:13-4, no slogan may contain the term "Democratic" or "Republican."  Plaintiffs nevertheless filed nominating petitions with the slogan "Democratic-Republican," which were subsequently denied on the basis that the slogan did not comply with N.J.S.A 19:13-4.  Pl. Complaint at Exs. D-G.

Plaintiffs then brought the instant emergent motion challenge to the constitutionality of the statute, both on its face and as applied to them.  I note, however, that Plaintiffs were aware in June of this year that their proposed slogan would not be accepted.  Id.  During the hearing, counsel for Plaintiffs, and Defendant Eugene LaVergne, offered several reasons for their delay in bringing this motion, none of which I find to provide reasonable justification for their delay.[8]

---

[8]     Emails from the New Jersey Division of Elections suggest that Plaintiffs were aware in June 2012 that their initial slogan request was not accepted.  See Pl. Compl. at Ex. D.  At the hearing, however, counsel for Plaintiffs as well as Plaintiff Eugene LaVergne asserted that these emails indicate that their slogan was being reviewed during the pendency of the summer.  Regardless, there is no dispute that Plaintiffs ultimately were aware that their slogan was rejected on August 10, 2012, see id. at Ex. I, but failed to file their complaint until a month later on September 11, 2012.  I also note that Plaintiffs delayed bringing their corresponding 10% claim until their slogan was denied, despite the 10% claim being ripe since the New Jersey Appellate Division's decision in Farmer.

As in many election related cases, timing is critical.  Under New Jersey law, the deadline for printing the November 2012 general election ballots was September 17, 2012, and the deadline for distributing and mailing the ballots was September 22, 2012.  N.J.S.A. 19:14-1, 19:63-5, 19:63-9.  Significantly, these dates represent the absolute deadline; by the time Plaintiffs had served the County Clerk Defendants, many of them had already begun their printing and/or mailing processes.  See, e.g., Def. Morris Cty. Clerk Bramhall Memo in Opp. at

Nevertheless, I will analyze Plaintiffs' challenge to N.J.S.A. 19:13-4 on its merits.

Plaintiffs specifically claim that the statute is facially invalid because it violates the First Amendment insofar as it prevents candidates from meaningfully associating through placing the slogan of their choice on the ballot next to their name.  In response, the State argues that the Court should abstain from hearing Plaintiffs' slogan challenge under the doctrine set forth in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971).  The State further asserted at the hearing that it has an interest in regulating slogans to avoid voter confusion.  I address the State's abstention argument first.

1.      Younger Abstention

"Abstention from the exercise of federal jurisdiction is, in all its forms, the exception, not the rule."  United Services Auto. Ass'n v. Muir, 792 F.2d 356, 360 (3d Cir. 1986) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct.1236 (1976)) (internal citations omitted).  "A district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements."  Id. at 361 (citation omitted).  To demonstrate that Younger abstention is warranted, "[t]he proponent of abstention must show that (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity

---

3.  In that connection, although I decide Plaintiffs' motion on its likelihood of success, I note that Plaintiffs' delay in bringing their motion -- considering the timing of ballot printing and mailing -- also weighs against granting preliminary injunctive relief.  At this late state in the election process, any injunctive remedy ordered by this Court would dramatically upset ongoing ballot printing and distribution.  See Purcell v. Gonzalez, 549 U.S. 1, 4-5, 127 S. Ct. 5 (2006) ("Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls.  As an election draws closer, that risk will increase.")  While I do not consider this to be an impediment to relief if Plaintiffs had demonstrated a clear constitutional violation, see Hooks, 121 F.3d at 883-84 ("[i]n the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights"),the public interest in an orderly election certainly favors denying injunctive relief where Plaintiffs cannot establish a constitutional harm.

to raise federal claims." Marran v. Marran, 376 F.3d 143, 154 (3d Cir. 2004) (quoting Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)).

The State argues that the first element -- existence of an ongoing state proceeding -- is met because Plaintiffs filed nominating petitions with the Secretary of State, seeking permission to use the Democratic-Republican slogan, and Plaintiffs chose not to pursue their right to appeal the denial of the slogan portion of their petitions to the New Jersey Superior Court, Appellate Division. See N.J.S.A. 19:13-12. Instead of pursuing their right to appeal, Plaintiffs filed suit in this Court. The State argues that this justifies abstention because "Younger and its progeny 'do not demand that there be a currently pending state proceeding at the time of either the filing of the federal complaint or determination of the motion to abstain. Rather, it is sufficient that the federal plaintiff had an adequate opportunity to resolve the federal issue in a state proceeding.'" State Opp. at 10-11. This quoted language hails from the district court decision in W.K., Jr. v. New Jersey Div. of Dev. Disabilities, 974 F. Supp. 791, 795 (D.N.J. 1997), which based its ruling on the Third Circuit's decision in O'Neill v. City of Philadelphia, 32 F.3d 785, 791 (3d Cir. 1994).

In O'Neill, the Third Circuit held that a state administrative proceeding is "ongoing" for Younger purposes when the time has expired for a plaintiff to appeal the administrative decision to a judicial forum. 32 F.3d at 792. However, as I explained in my prior decision in Dultz v. Velez, 726 F.Supp.2d 480 (D.N.J. 2010), and as the court in O'Neill and other courts have acknowledged, that holding applies only to coercive administrative proceedings brought by the State:

> O'Neill differentiated between coercive administrative proceedings begun by the State (i.e., the prosecution of a traffic ticket) and remedial actions instituted by an individual seeking redress from a wrong inflicted by the State. Whereas exhaustion of administrative remedies was required for coercive proceedings,

exhaustion was not required for remedial actions.

Durga v. Bryan, 3:10–cv–1989, 2011 WL 4594281, *6 (D.N.J. Sept. 30, 2011) (internal citations omitted); see also O'Neill, 32 F.3d at 791 n.13 ("the action taken by the City of Philadelphia, to enforce its traffic tickets against O'Neill and Goodman, was coercive action which the plaintiffs sought to circumvent by filing their complaint in federal court."); Dultz, 726 F. Supp. 2d at 493 (stating that O'Neill "limit[s] Younger's application to coercive administrative proceedings only").  The State's papers do not acknowledge this important distinction.[9]

Here, because Plaintiffs' nominating petitions were not coercive proceedings brought by the State but instead were instituted by Plaintiffs in an attempt to secure the right to use their slogan of choice on the November ballot, I conclude that the "ongoing proceeding" prong of the Younger analysis is not met.  Accordingly, I will not abstain from ruling upon this aspect of Plaintiffs' case.

2.      Constitutional Claims

The standard of review applicable to Plaintiffs' First Amendment claim is the same Anderson balancing test set forth previously in this Opinion.  See Rogers v. Corbett, 468 F.3d 188, 194 (3d Cir. 2006) ("Anderson sets out the proper method for balancing both associational and equal protection concerns and the burdens that the challenged law creates on these protections as weighed against the proffered state interests.").  Again, I balance the burden imposed by the statute with the state's interest in regulating elections.

Plaintiffs do not allege any specific burden other than the inability to use the slogan of their choice.  As best as the Court can surmise, it appears that Plaintiffs believe they have an

---

[9]      In this connection, I note that, in my decision in Dultz, I questioned the rationale of the W.K. case upon which the State relies because that case failed to take into account O'Neill's coercive/remedial distinction.

unqualified right to dictate what appears next to their name on the general election ballot. Plaintiffs provide no support for this proposition, and, as I have noted extensively in this Opinion there is no fundamental right regarding ballot treatment.  See Anderson, 460 U.S. at 788 ("not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates").

Indeed, the cases cited by Plaintiffs are largely inapplicable to Plaintiffs' First Amendment claim.[10]  The only case cited by Plaintiffs that potentially supports their claim is Riddell v. Nat'l Democratic Party, 508 F.2d 770 (5th Cir. 1975).  In Riddell, the Democratic Party of the State of Mississippi had splintered into two factions -- the existing "Regulars" and the newly formed "Loyalists."  Id. at 773.  Both factions wished to register as the official "Democratic Party" for the state, but a Mississippi statute prohibited political parties from using the name or any part thereof of another registered political party.  Id. at 772.  The Regulars moved to enjoin the new faction from using the name, and the Loyalists responded by challenging the Mississippi statute on constitutional grounds.  Id. at 773.  The Fifth Circuit held

---

[10]     See Timmons, 520 U.S. 351 (constitutionality of "anti-fusion" law); Norman v. Reed, 502 U.S. 279, 289, 112 S.Ct 698 (1992) ("the issue on review is not whether the Chicago HWP and the Cook County HWP are in some sense 'separate parties,' but whether and how candidates running for county office may adopt the name of a party established only in the city"); Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 107 S.Ct. 544 (1986) (challenge to state election law provision "requiring voters in any party primary to be registered members of that party"); Rosen v. Brown, 970 F.2d 169, 171 (6th Cir. 1992) (holding as unconstitutional "Ohio's refusal . . . to place the designation Independent below the name of a candidate whose name appears on the general election ballot as a result of a nominating petition").  But see Rosen, 970 F.2d at 175 ("Once a State admits a particular subject to the ballot and commences to manipulate the content or to legislate what shall and shall not appear, it must take into account the provisions of the Federal and State Constitutions regarding freedom of speech and association, together with the provisions assuring equal protection of the laws."); Freedom Socialist Party v. Bradbury, 182 Or. App. 217, 227 (2002) ("While the state has an interest in preventing voter confusion that may justify at least some restriction on parties' choice of names, a restriction that prohibits a new party from using 'any part' of the name used by another political party sweeps too broadly, and may, in fact, cause more voter confusion than it alleviates.").

the statute to be unconstitutional, concluding that it significantly infringed on the associational rights of the Loyalists and was not narrowly tailored to the state's interest in preventing voter confusion.  Id. at 776-78.

I do not consider Riddell to be dispositive of Plaintiffs' claim.[11]  Riddell concerned a split within an existing political party.  In reaching its holding, the Fifth Circuit explained that "the opportunity to label one's group as part of the Democratic Party has meaning, both to active party members and to the voters . . . because in our view the parties to this action assume that there is a difference between Democrats and members of other political parties."  Riddell, 508 F.2d at 778-79.  By contrast, Plaintiffs here are not a newly formed faction of one of the existing political parties in the state.  In fact, they do not allege they have any connection whatsoever to the Democratic or Republican Parties' principles, beliefs, or values.  Instead, counsel for Plaintiffs stated during the hearing that the slogan was an attempt to relate to "founding principles," but he was unable to explicate which specific principles.  Counsel for Plaintiffs further stated that the slogan was an attempt to bring Plaintiffs' organization together under one "banner."  Indeed, although Plaintiffs describe themselves as the "modern-counterpart" to the Democratic-Republican party of this nation's Founding Fathers, see Pl. Memo at 9-11, I am unable to discern any connection between that defunct party and Plaintiffs' organization.  See generally Ripon Soc., Inc. v. Nat'l Republican Party, 525 F.2d 567, 581 (D.C. Cir. 1975) ("[T]he present Democratic Party can trace its origins to the Democratic Republican Party which Thomas Jefferson began to assemble even before the end of Washington's first term. A case can likewise be made that Hamilton's Federalists and subsequently the Whig Party were the predecessors of

---

[11]    I also question Riddell's precedential value in this case because it was decided before the United States Supreme Court decision in Anderson set forth the proper standard of review for constitutional challenges to election laws.

the present Republican Party." (Citation omitted.))   Thus, although Plaintiffs claim that their organization "share[s] many diverse political views," none of the views alleged actually stem from the original Democratic-Republican party platform.   It is apparent that Plaintiffs do not seek to use the slogan "Democratic-Republican" in order to "to identify [themselves] with an historical tradition, a national and regional political organization, and a well-established structure to facilitate fund-raising."  Riddell, 508 F.2d at 775.  Accordingly, I conclude that Plaintiffs have not demonstrated that N.J.S.A. 19:13-4 imposes a burden beyond preventing Plaintiffs from using a slogan similar to the names of the recognized political parties.

I turn next to the State's interest.  The State claims that the purpose of N.J.S.A. 19:13-4 is to avoid voter confusion by limiting the use of political party names only to candidates of those parties.  In that regard, the State offers the same rationale it does with respect to N.J.S.A. 19:5-1: that the State may regulate ballot content to ensure political party candidates -- i.e., candidates who have achieved a modicum of community support -- are not confused with unaffiliated candidates, and vice-versa.  The State relies on Timmons, 520 U.S. 351, and Burdick, 504 U.S. 428, for the proposition that the ballot is not a forum for political expression.

The idea that Plaintiffs' slogan "Democratic-Republican" may result in voter confusion finds support in this district.  See Voltaggio v. Caputo, 210 F. Supp. 337, 339-40 (1962) ("Plaintiff is not a candidate of the Democratic Party.  The characterization of him as 'Life Long Democrat' on the official ballot might mislead voters to assume he was.  Allowance of that sort of practice could lead to ballot chaos and render harm to our fundamental process of government."), appeal dismissed, 83 S. Ct. 325.  Plaintiffs argue that Voltaggio is inapplicable to their claims because that case was decided on Equal Protection Clause, and not First Amendment, grounds.  See Pl. Memo, 39.  Although Voltaggio's holding may not control the

resolution of Plaintiffs' claim, I am nonetheless persuaded by its reasoning regarding voter confusion, and I find it applicable to Plaintiffs' case.[12]

Plaintiffs do not otherwise address the problem of voter confusion except to suggest that voters are intelligent enough to understand the difference between candidates labeled as "Democratic," "Republican," and "Democratic-Republican."   Plaintiffs have produced no evidence of whether use of a political party name in an unaffiliated candidate's slogan would lead to voter confusion, and the Court is unwilling to engage in speculation as to whether Plaintiffs' slogan would in fact lead to such confusion.[13]  Cf. New Alliance Party, 861 F. Supp. at 288 ("courts have consistently held that the effect of ballot placement on election outcomes is a factual determination"); Farmer, 332 N.J. Super. at 290 ("The issue should be decided by persuasive empirical evidence.  In this case no admissible evidence has been submitted on this particular factual contention, only speculation.").

I am persuaded that the State has an important interest in avoiding ballot confusion, and that it is well within its regulatory powers to enact nondiscriminatory rules to do so.  See Norman v. Reed, 502 U.S. 279, 290, 112 S.Ct 698 (1992) ("To prevent misrepresentation and electoral confusion, Illinois may, of course, prohibit candidates running for office in one subdivision from adopting the name of a party established in another if they are not in any way affiliated with the

---

[12]     Plaintiffs alternatively assert that Voltaggio is "no longer good law."  Id.  Plaintiffs advance no case overturning, or even undermining, Voltaggio's holding, and I therefore reject this argument.

[13]     The Court also regards Plaintiffs' argument with skepticism.  Plaintiffs' corresponding challenge in this case to N.J.S.A. 19:5-1 turns on the ability to garner votes from voters too unintelligent to review an entire ballot prior to voting.  See Farmer, 332 N.J. Super. at, 285 ("Plaintiffs believe there is an advantage in securing the first column on the ballot (that is, the column on the far left), claiming there are voters who go to the polls and pick, without thought or reason, the candidates whose names appear to the far left of the ballot.").  But with regard to N.J.S.A.19-13-4, Plaintiffs contend that these same voters are intelligent enough not to be confused by an unaffiliated candidate's use of one or more political party names.  Plaintiffs offer nothing to reconcile this inconsistency.

party."); Burdick, 504 U.S. at 434 ("when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions").[14]   I return to the Supreme Court's decision in Timmons, which rejected a constitutional challenge to Minnesota's "anti-fusion" law that prohibited candidates from listing themselves with more than one party on the ballots.  In addressing the claim that the anti-fusion statute prevented minor party candidates from meaningfully conveying candidate information via the ballot, the Court stated: "We are unpersuaded, however, by the [plaintiff] party's contention that it has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate. Ballots serve primarily to elect candidates, not as forums for political expression."  Timmons, 520 U.S. at 362-63 (citations omitted, emphasis added).

I find Timmons to be instructive in resolving Plaintiffs' claim.  Although N.J.S.A 19:13-4 restricts the content of a candidate's slogan to a certain degree, the statute does not "restrict the ability of [Plaintiffs] . . . to endorse, support, or vote for anyone they like."  Timmons, 520 U.S.

---

[14]    See also the decision of the Illinois District Court in Tomei v. Finely, 512 F. Supp 695 (N.D. Ill. 1981).  In Tomei, the local Democratic Party employed the acronym "REP" during a campaign in a predominately Republican-leaning township, with the hope that voters would be confused into thinking that the REP slogan indicated "Republican." Id. at 696-97.  The District Court granted the Republican party's injunction against the use of the REP slogan. Id. at 699.  In rejecting the Democratic Party's constitutional claim, the District Court reasoned that "barring the use of the acronym 'REP' is not a restraint on expression.  That acronym is not the expression of ideas at all, or if it is, it is the deliberate false expression to the voters of the idea that defendants are Republicans . . . ." Id. at 698.
    In the present case, nothing suggests that Plaintiffs seek to use the slogan "Democratic-Republican" to deliberately misinform voters.  Nevertheless, Tomei is analogous to Plaintiffs' claim in the sense that both cases involve the use of campaign slogans that may lead to voter confusion.  See Voltaggio v. Caputo, 210 F. Supp. 337, 339-40 (1962) (recognizing that use of slogan "Life Long Democrat" by unaffiliated candidate would lead to voter confusion over whether  candidate was a member of the Democratic Party).

at 363.  Significantly, the statute does not "directly limit the party's access to the ballot. . . .  [The statute is] silent on parties' internal structure, governance, and policymaking."  Id.  Moreover, Plaintiffs have not alleged or explained how their inability to use the slogan "Democratic-Republican" has prevented Plaintiffs from conveying their organization's message to the electorate.  Accordingly, I find that the burden the statute imposes on Plaintiffs, though not trivial, is not so severe as to outweigh the State's stated interests in ensuring the integrity of the election process and avoiding voter confusion.  I therefore conclude that N.J.S.A 19:13-4, on its face, does not infringe on Plaintiffs' constitutional rights.  See Timmons, 520 U.S. 363 ("[The Minnesota statutes] also limit, slightly, the party's ability to send a message to the voters and to its preferred candidates.  We conclude that the burdens Minnesota imposes on the party's First and Fourteenth Amendment associational rights -- though not trivial -- are not severe.").[15]

Finally, Plaintiffs raise an "as applied" challenge to N.J.S.A. 19:13-4.  Specifically, Plaintiffs argue that the State certified, as political party names, the "Democratic Party" and the "Republican Party."  Therefore, Plaintiffs contend, no slogan can include the terms "Democratic," "Republican," or "Party."  See Pl. Memo at 36-38.  In support of their as applied challenge, Plaintiffs offer evidence that their slogan containing "Democratic" and "Republican" was rejected, while other unaffiliated candidates' slogans with the term "Party" in them were accepted.  Pl. Memo, Ex. I.  Plaintiffs' argument in this regard borders on being frivolous.  Plaintiffs fail to comprehend that "Party" is not part of the name of a "political party" under N.J.S.A. 19:13-4 and 19:1-1.  I find Plaintiffs' as applied challenge to be wholly meritless.

---

[15]     To the extent that Plaintiffs also challenge N.J.S.A 19:13-4 for conferring preferential treatment to political party candidates in violation of the Equal Protection Clause, I reject that argument for the same reasons as stated in connection with Plaintiffs' challenge to N.J.S.A. 19:5-1.  Again, Plaintiffs have not demonstrated that the statute's restriction on slogans imposes a burden on them that outweighs the State's interest in ensuring the integrity of elections.

**IV. CONCLUSION**

For these foregoing reasons, the Court finds that Plaintiffs have failed to prove a likelihood of success on their claims that the challenged New Jersey election laws are unconstitutional.  As a result, Plaintiffs' motion for preliminary injunctive and declaratory relief is **DENIED**.

An order will be entered consistent with this Opinion.


Dated:  October 11, 2012                          /s/    Freda L. Wolfson____
                                                 Freda L. Wolfson, U.S.D.J.